IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 01-cv-01197-LTB-BNB

PAUL F. RATHER,

Plaintiff,

v.

JOHN SUTHERS,
LEE HENDRIX,
JOHN TALTON,
MICHELLE NYCZ,
LOU NORDINE, and
STEVEN PONTIUS,

Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter is before me on the plaintiff's **Motion for Preliminary Injunction with Brief in Support Thereof** (the "Motion"), filed October 27, 2004. For the following reasons, I respectfully RECOMMEND that the Motion be DENIED.

### I.  BACKGROUND

The plaintiff is currently incarcerated by the Colorado Department of Corrections ("DOC") at the Colorado Territorial Correctional Facility. The plaintiff filed his Second Amended Prisoner Complaint (the "Complaint") on April 7, 2003. The incidents alleged in the Complaint involve his incarceration at both the Sterling Correctional Facility and the Colorado Territorial Correctional Facility.

The Complaint alleges the following:

The plaintiff practices the Asatru/Odinist religion. He submitted to the prison proposals outlining the practice of the Asatru/Odinist religion. The proposals were denied. The defendants instead promulgated Administrative Regulation ("AR") 800-1, which is contrary to the plaintiff's religious beliefs and practices. The plaintiff and his religion were subsequently labeled as being white supremacist.

The Complaint asserts five claims against the defendants: (1) failure to recognize the plaintiff's religious practices in violation of his right to free exercise of religion; (2) religious and racial discrimination in violation of the equal protection clause; (3) retaliation for exercising his religion; (4) conspiracy to favor "Abrahamic religions" over "Nature-based" religions in violation of the establishment clause; and (5) malicious prosecution of the plaintiff based on his free exercise of religion.

Although the plaintiff did not file a separate claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), he seeks a declaratory judgment that the defendants violated "his right to free exercise of religion pursuant to the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000(cc)." Id. at twenty-eighth consecutive page. Construing the Complaint liberally, it asserts a claim under RLUIPA, 42 U.S.C. 2000cc-1.

## II.  THE LAW

Injunctive relief is a drastic remedy and is granted only in cases where the right to relief is clearly established. Goldammer v. Fay, 326 F.2d 268, 270 (10th Cir. 1964). The burden is on the movant to establish his right to the relief requested. Penn v. San Juan Hospital, Inc., 528 F.2d 1181, 1185 (10th Cir. 1975). To obtain a preliminary injunction under Rule 65(a), the plaintiff must show that (1) he will suffer irreparable injury unless the injunction issues; (2) the threatened

injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits. Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir.1980).  The plaintiff's right to relief must be clear and unequivocal.  Penn, 528 F.2d at 1185.

The following kinds of preliminary injunctions are disfavored:  (1) those that disturb the status quo; (2) those that are mandatory as opposed to prohibitory; and (3) those that afford the movant substantially all the relief he may recover at the conclusion of a full trial on the merits. SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096 1098-99 (10th Cir. 1991).  "[A]ny preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."  O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004).  The plaintiff seeks both a mandatory injunction and an injunction that would disturb the status quo.[1]  Therefore, he "must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of the harms."  Id. at 976.

### III.  ANALYSIS

As a preliminary matter, the Motion does not contain a request for any specific injunctive relief.  For this reason alone, the Motion should be denied.

---

[1] Mandatory injunctions "affirmatively require the nonmovant to act in a particular way." SCFC, 936 F.2d at 1099.  Injunctions that disturb the status quo alter the parties existing relationship.  Id. at 1100.  "The status quo is not defined by the parties' existing *legal rights*; it is defined by the *reality* of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights."  Id. (emphasis in original).

3

Nevertheless, I have carefully read the Motion in an attempt to identify the relief sought. The Motion contains the following statement:

> Under the regulatory scheme of A.R. 800-01, Plaintiff is not accorded all of his ceremonies (Holy Days), only eight (8) out of the seventeen (17); is not allowed any canteen or other food or drink items used for sacrificial offering to the Deities; must perform rituals indoors, which is violative of religious beliefs about holding the Deities indoors; denied any ability for sweathouse ceremonies, nor is he permitted the religious implements necessary for conducting said ceremonies.

Id. at seventh consecutive page. Out of an abundance of caution, I will analyze the Motion as if the plaintiff is seeking materials and privileges beyond that which the DOC's Administrative Regulation 800-01 ("AR 800-01") provides, *i.e.*, injunctive relief in the form of nine additional ceremonies, food and drink items for sacrificial offerings, outdoor rituals, sweathouse ceremonies, and unidentified implements necessary for conducting ceremonies.

### A.  Likelihood of Success on the Merits

The plaintiff bears the burden of establishing that he has a *substantial* likelihood of succeeding on the merits. The plaintiff analyzes his likelihood of success only as to his First Amendment claim. Id. at fourth through eighth consecutive pages (discussing whether AR 800-01 is reasonable under the First Amendment analysis set forth below).

The circuit court has summarized a prisoner's First Amendment right to free exercise of religion as follows:

> Even though they are incarcerated, prisoners retain fundamental constitutional rights. These rights include the reasonable opportunity to pursue one's religion as guaranteed by the free exercise clause of the First Amendment. However, because of the inherent difficulties and concerns in running a prison, what constitutes a reasonable opportunity must be evaluated with reference to legitimate penological objectives of the prison. Thus, the standard for reviewing the validity of a prison regulation or

> policy affecting a prisoner's fundamental constitutional right, such
> as the free exercise of his or her religion, is this: when a prison
> regulation impinges on inmates' constitutional rights, the regulation
> is valid if it is reasonably related to legitimate penological interests.
> This reasonableness inquiry considers several factors: (1) whether
> there exists a rational connection between the prison policy or
> regulation and a legitimate governmental interest advanced as its
> justification; (2) whether there are alternative means of exercising
> the right notwithstanding the policy or regulation; (3) what effect
> accommodating the exercise of the right would have on guards,
> other prisoners, and prison resources generally; and (4) whether
> there are ready, easy-to-implement alternatives that would
> accommodate the prisoner's rights.

Makin v. Colorado Department of Corrections, 183 F.3d 1205, 1209 (10th Cir. 1999) (quotations and citations omitted).

Thus, the plaintiff must first establish that AR 800-01 impinges on his constitutional right to the free exercise of religion. Then, utilizing the four factors in Makin, he must establish that AR 800-01 is not reasonably related to legitimate penological interests.

The plaintiff argues that AR 800-01 is not rationally related to a legitimate governmental interest because "many of the mandatory religious practices and implements Plaintiff seeks are likewise used, albeit in a different manner, and/or in similar form, are found in the American Indian religion" and other religions within the DOC. *Motion*, fifth consecutive page. Because "the religious practices and implements Plaintiff seeks do not pose security concerns within the CDOC for other faith groups," the DOC cannot deny these things to the plaintiff based on security issues.[2] However, I do not reach the issue of whether the plaintiff has established that

---

[2] The defendants do not provide any *evidence* that the plaintiff is being denied religious practices and implements due to security reasons. To the contrary, the only assertion regarding security concerns is made in argument by defendants' counsel. *Motion*, p. 8. In addition, to the extent the defendants rely on a letter from Karl Thorrwolf, the exhibit is unauthenticated. Id. at Exhibit F. Therefore, it is impossible to discern if Thorrwolf is an Asatru advisor "that was contacted specifically with regard to [the plaintiff's] requests." Id. at p. 7.

5

AR 800-01 is rationally related to a legitimate governmental interest because the plaintiff has failed to first establish that AR 800-01 impinges on his right to free exercise of religion.

The DOC submitted the affidavit of Katherine Sanguinetti, the Chief of Community Resources for the DOC. *Defendants' Response to Plaintiff's Second Motion for Preliminary Injunction* (the "Response"), Exhibit D. As a part of her duties, Ms. Sanguinetti researches various religious accommodation requests that are filed by DOC inmates. Id. at ¶ 4. Ms. Sanguinetti's affidavit states that AR 800-01 recognizes the Asatru faith and allows for eight Asatru holy days. Id. at ¶ 7. In addition, it allows for numerous personal items including: one Thor's hammer medallion; one white cloth; one picture of Dieties; one set of runes; and one bar or set of rune cards, id. at ¶ 8; and group items including one altar; one bowl; one libation horn; six altar candles and holders; a 12 x 10 picture of Thor's hammer; pictures of Dieties; one evergreen twig; one gandar or wooden staff; VHS videotapes; and firewood if approved at a facility level. Id.

The accommodations currently allowed by AR 800-01 are the product of Ms. Sanguinetti's consultation with Asatru faith group advisors. Id. The Asatru faith group advisors declared that the holy days and faith items recognized and allowed by the DOC meet all requirements for the practice of the Asatru faith. Id. at ¶ 9. None of the advisors consulted indicated that the Asatru faith requires a sweatlodge, a sweathouse ceremony, a drum, a rattle, a bucket and dropper, a lava rock, or flags. Id. at ¶ 10. With respect to the eight mandatory Asatru holy days, there is an outdoor multipurpose faith area available. Id. at ¶ 13. To date, no Asatru practitioner has registered to use this area for holy day services. Id.

In summary, AR 800-01 limits Asatru religious items and practices to those that are necessary to practice the Asatru faith. The plaintiff does not identify his requested items and

6

practices with specificity, nor does he make any showing that the items and practices are necessary to practice his faith. Therefore, the plaintiff has failed to establish that AR 800-01 impinges on his constitutional right to free exercise of religion. As a result, the plaintiff has failed to meet his burden to establish that he has a substantial likelihood of succeeding on the merits of his First Amendment claim.

### B. Irreparable Injury

The plaintiff argues that, because he has been deprived of his First Amendment right to freedom of religion, no further showing of irreparable injury is necessary. *Motion*, tenth consecutive page. It is true that a presumption of irreparable injury exists where constitutional rights are infringed. Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001) (holding that a presumption of irreparable injury exists where plaintiff claimed that monetary relief would not properly redress the violation of his right to free exercise of religion caused by previous denials of pastoral visits). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). See also Rankin, 483 U.S. at 383-84 (discharged employee may be entitled to reinstatement if discharged for exercise of constitutional right to freedom of expression). The plaintiff, however, has failed to establish a likelihood of success on his First Amendment claim. As a result, he is not entitled to a presumption of irreparable injury.

Because the plaintiff has failed to establish that there is a substantial likelihood that he will prevail on the merits and that he will suffer irreparable injury unless the injunction issues, I need not address the remaining requirements for injunctive relief.[3]

---

[3] In addition, because I find that the defendants prevail on the merits of the plaintiff's Motion, I do not address their argument regarding the applicability of the law of the case doctrine.

## IV.  CONCLUSION

I respectfully RECOMMEND that the plaintiff's Motion for Preliminary Injunction with Brief in Support Thereof be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated February 1, 2006.

                                    BY THE COURT:

                                     s/ Boyd N. Boland
                                    United States Magistrate Judge